UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| HIGH SIERRA HOLISTICS, LLC, | Case No. 3:19-cv-000270-LRH-CLB |
| Plaintiff, | ORDER |
| v. | |
| THE STATE OF NEVADA, DEPARTMENT OF TAXATION, | |
| Defendant. | |

Plaintiff High Sierra Holistics, LLC ("HSH") has filed a motion to stay this action under the *Colorado River* doctrine. (ECF No. 29). Defendant, the Nevada Department of Taxation ("NDOT"), responded (ECF No. 30), and HSH timely replied (ECF No. 35). For the reasons stated below, the Court will grant HSH's motion to stay.

**I. Factual Background and Procedural History**

This action concerns the process by which NDOT assigns licenses to entities applying to operate recreational marijuana retail stores. On September 7, 2018, NDOT began soliciting applications from qualified applicants for a total of sixty-four recreational marijuana retail stores to be opened throughout Nevada, seven of which were allocated to Washoe County. (ECF No. 1-2 at 4–5). NDOT ranked the applications based on a number of factors including the prospective owners' prior business experience, educational achievements, experience operating a medical marijuana establishment, and plan for growing the marijuana plants. (*Id*. at 5). HSH submitted an application to operate a retail facility within the Reno jurisdiction, which had six licenses allocated to it. (*Id*. at 6)

On December 5, 2018, NDOT notified HSH that its license application was not approved because it "did not score high enough to receive an available license within the Reno jurisdiction." (ECF No. 1-2 at 6). NDOT also informed HSH that it would have the opportunity to review its ranking on January 15, 2019, but HSH alleges that following its request to review its ranking on that date, NDOT never responded. (*Id*.) HSH also alleges that it has never received a formal written denial of its application as required by law. (*Id*.) It is HSH's belief that NDOT granted conditional licenses to applicants that ranked lower than HSH did; HSH also claims that NDOT granted more than one license to the same entity. (*Id*. at 6–7).

HSH filed suit against NDOT in the Second Judicial District Court in Washoe County on January 16, 2019. (ECF No. 1-2 at 3). Among its causes of action, HSH alleged procedural and substantive due process violations and an equal protection violation under both the Nevada and United States constitutions. (*Id*. at 9–11). HSH's case was not removed to this Court until May 21, 2019; it appears that HSH properly served NDOT in Carson City on January 23, 2019. (ECF No. 8 at 1). NDOT, however, argued that pursuant to the revised Nevada Rule of Civil Procedure 4.2(d), which went into effect on March 1, 2019, HSH was required to serve both the agency it was suing (NDOT) and the Attorney General of Nevada. (ECF No. 11 at 2). In any event, HSH did not file a motion to remand within thirty days of removal. On December 27, 2019, this case was consolidated with Case No. 3:19-cv-00271-MMD-CLB. (ECF No. 28).

Parallel to this proceeding is an action currently pending in state court in Clark County, Nevada. (ECF No. 29 at 1). That case is a consolidation of eight cases that HSH claims "include almost the same set of facts, legal issues, and evidence" as this action. (*Id*.) HSH is one of the eight plaintiffs in the Clark County action. (*Id*. at 1–2). At the time HSH filed the present motion to stay, trial was scheduled to begin on April 20, 2020 (ECF No. 29-1 at 2), but based on a public records check, it does not appear that the case went to trial on that date. It is unclear what the status of the Clark County case is given the impact that the ongoing coronavirus pandemic has had on the state and federal judicial systems in Nevada. The state court entered a preliminary injunction against NDOT, preventing it from issuing final licenses to the chosen applications. (*Id*.). That injunction

2

is currently on appeal in the Nevada Supreme Court. (*Id*. at 1). HSH's motion to stay seeks to stay this action until a final decision is reached in the state case.

## II. Legal Standard

The *Colorado River* doctrine is a "narrow exception to the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Holder v. Holder*, 305 F.3d 854, 87 (9th Cir. 2002). It is a "form of deference to state court jurisdiction" and not a form of abstention. *Coopers & Lybrand v. Sun-Diamond Growers of CA*, 912 F.2d 1135, 1137 (9th Cir. 1990). The doctrine is applied only in "exceptional circumstances." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983). Courts examine eight factors to determine whether to grant a stay:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011). Rather than apply the factors as a "mechanical checklist," courts must instead analyze the factors in a "pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16, 21.

## III. Discussion

Prior to conducting any *Colorado River* analysis, the Court must first determine whether the federal and state cases are "substantially similar." *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 845 (9th Cir. 2017). Cases are "substantially similar" when "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Goodin v. Vendley*, 356 F.Supp.3d 935, 944 (N.D. Cal. 2018). "Exact parallelism" between the federal and state case is not required. *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). HSH argues that this case and the Clark County case are substantially similar because its complaints in both are nearly "identical" and the Clark County case is a consolidation of eight "substantially similar" cases. (ECF No. 29 at 3–4). NDOT admits that there "are some similarities between the present

3

actions in federal court and the pending state court litigation," but argues that the heart of the state court case is an injunction preventing NDOT from conducting a final inspect of conditional licenses, which HSH has not applied for here. (ECF No. 30 at 2).

Upon a review of both its federal and state court complaints, the Court agrees with HSH that the actions are substantially similar. There is no substantive difference between HSH's federal complaint and its Clark County complaint that was consolidated with seven other similar complaints. In its consolidation order, the state court found that the "plaintiffs in all [these] cases allege substantially similar claims against [NDOT] and request substantially similar remedies to rectify [NDOT's] alleged wrongdoings." (ECF No. 29-3 at 5). Although NDOT argues that the Clark County case primarily concerns the conditional license inspection injunction, the fact that the state court granted an injunction on that ground does not change the fundamental nature of HSH's state court complaint and its similarities to its federal complaint.

Turning to the eight *Colorado River* factors, the first factor—which is whether the federal or state court assumed jurisdiction over the property first—is inapplicable because no property is at issue in this case. Accordingly, the Court will examine the remaining seven factors. *American Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988).

### A. Inconvenience of the Federal Forum

Under this factor, the Court considers "whether the inconvenience of the federal forum is so great" such that abstention would be proper. *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1368 (9th Cir. 1990). Courts often analyze inconvenience by looking at the location of the parties, likely witnesses, evidence, and the availability of compulsory process over likely witnesses. *TPOV Enterprises 16, LLC v. Paris Las Vegas Operating Co., LLC*, No. 2:17-CV-346-JCM-VCF, 2018 WL 7501299, at *2 (D. Nev. Oct. 22, 2018). HSH argues that this factor "does not apply" because the "federal or state court are equally convenient." (ECF No. 29 at 3). But HSH's concession that both forums are equally convenient suggests that this factor weighs against a stay of the federal action. Accordingly, this factor weighs against a stay.

///

///

4

### B. Danger of Piecemeal Litigation

Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results. *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988). A case must raise a "special concern" about piecemeal litigation to warrant a stay. *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 979 (9th Cir. 2011). This factor is met only when "there is evidence of a strong federal policy that all claims should be tried in the state courts." *U.S. v. Morros*, 268 F.3d 695, 706–07 (9th Cir. 2001). The mere possibility of piecemeal litigation is not sufficient to warrant a stay. *R.R. Street & Co. Inc.*, 656 F.3d at 966. Here, HSH has not provided any evidence that there is a strong federal policy mandating that the claims it has raised should be tried in the state courts. Accordingly, this factor weighs against a stay. *TPOV Enterprises 16, LLC v. Paris Las Vegas Operating Co., LLC*, No. 2:17-CV-346-JCM-VCF, 2018 WL 7501299, at *3 (D. Nev. Oct. 22, 2018) ("the parties have not raised and the court is not aware of any 'strong federal policy that the claims should be tried in the state courts'. . .Thus, this factor weighs against abstention.").

### C. The Order in Which the Forums Obtained Jurisdiction

This factor does not just look at which complaint was filed first, but rather examines "how much progress was actually made in the state and federal actions." *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988). HSH's Clark County complaint and federal complaint (originally filed in state court, later removed to federal court) were both filed on January 16, 2019. (ECF No. 1-2 at 3; ECF No. 29-2 at 2). HSH's Clark County complaint was consolidated with seven other similar complaints on December 5, 2019. (ECF No. 29-3). The consolidated case has proceeded through discovery and, at the time the parties briefed HSH's motion to stay, trial was scheduled for April 20, 2020. (ECF No. 29-1 at 2). Although the case did not proceed to trial on that date, the fact that the case was set for trial is evidence of how much the Clark County case has progressed in the approximately fourteen months since it was filed. Unlike that case, discovery in the federal case has yet to begin. NDOT does not address this factor in its response, which amounts to a concession that the Clark County case has proceeded farther than the federal case. Accordingly, this factor weighs in favor of a stay.

**D. Source of Law**

The fifth *Colorado River* factor looks to whether federal or state law will provide the rule of decision on the merits. *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 980 (9th Cir. 2011). "Although the presence of federal-law issues must always be a major consideration" weighing against a stay, "the presence of state-law issues may weigh in favor" of a stay "only in some rare circumstances." *Id.* (internal quotations omitted). It is not enough that a state law case is complex because it involves numerous parties or claims. *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 844 (9th Cir. 2017). HSH argues that despite the presence of several federal causes of action in its complaint, its case "will likely be determined primarily under Nevada State Law." (ECF No. 29 at 6). In particular, HSH has alleged procedural due process, substantive due process, and equal protection violations under both the Nevada and United States constitutions. (ECF No. 1-2 at 9–11). The complaint's purely state law claims involve interpretations of several Nevada statutes and regulations related to licensing of the recreational cannabis industry: NEV. REV. STAT. 453D, §80(3) of the Adopted Regulation of the Department of Taxation, LCB File No. R092-17, and NEV. ADMIN. CODE 453D. (*Id.* at 4–5, 7).

HSH's state law claims are not "routine issues of state law," such as "breach of contract [or] indemnification and subrogation," that ordinarily do not warrant consideration of a stay. *R.R. Street & Co. Inc.*, 656 F.3d at 980. Instead, the resolution of HSH's state law claims will require an analysis of NDOT's conduct and whether the administrative process of licensing recreational marijuana businesses violates Article 19, Section 3 of the Nevada constitution. (ECF No. 30 at 2). These are the types of claims that state courts are in a better position to decide than federal courts. *See, e.g., Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1168–69 (9th Cir. 2017) (noting that "rare circumstances" were present where the state case raised difficult questions related to Montana eminent domain law); *Morisada Corp. v. Beidas*, 939 F.Supp. 732, 740 (D. Haw. 1995) (state law claims concerned Hawaii's Trade Secrets Act). This factor weighs in favor of a stay.

**E. Adequacy of the State Forum and Parallelism of the Suits**

These factors concern "whether the state court might be unable to enforce federal rights." *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 845 (9th Cir. 2017). If the state court

cannot adequately protect the rights of the federal litigants, a stay is inappropriate. *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 981 (9th Cir. 2011). A typical scenario where a state court cannot adequately protect federal rights is when a state court does not have jurisdiction to entertain certain federal claims. *Holder v. Holder*, 305 F.3d 854, 869 n.5 (9th Cir. 2002) (noting that California state courts "probably" do not have jurisdiction to hear claims brought under the International Child Abduction Remedies Act). This is known as the adequacy component of these factors. The second component, parallelism, looks to whether the parallel proceedings address "substantially similar" claims. *Seneca Ins. Co., Inc.*, 862 F.3d at 845. Both of these factors are more relevant when either "counsels against abstention, because while inadequacy of the state forum or insufficient parallelism may preclude abstention, the alternatives never compel abstention." *Id*.

Although their decisions are not precedential, state courts have jurisdiction to hear claims brought under the United States Constitution. *Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir. 1986). There is thus no issue with the state court in Clark County ruling on HSH's federal causes of action. As to the issue of parallelism, while HSH's federal and state complaints are nearly identical, the state court entered a preliminary injunction based upon an analysis of whether Nev. Rev. Stat. 453D.200(6) is compliant with the Nevada constitution. (ECF No. 24-1 at 25). HSH has not sought the same temporary injunctive relief in the federal case, but given the scope of HSH's state law claims, it is likely that the Court would necessarily need to consider the constitutionality of Nev. Rev. Stat. 453D.200(6) at some point during the course of the litigation. The parallelism factor weighs in favor of a stay, but the adequacy of the state forum factor does not.

### F. Desire to Avoid Forum Shopping

The forum shopping factor looks to whether either party improperly sought more favorable rules in its choice of forum or pursued suit in a new forum after facing setbacks in the original proceeding. *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 846 (9th Cir. 2017). A party does not engage in forum shopping when it acts within its rights in filing a suit in the forum of its choice. *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1371 (9th Cir. 1990). This is true even

if the "chronology of events suggests that both parties took a somewhat opportunistic approach to th[e] litigation." *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 981 (9th Cir. 2011). A party does, however, engage in forum shopping when it seeks to avoid adverse rulings made by the state court. *Travelers Indem. Co.*, 914 F.2d at 1371.

HSH argues that the fact that NDOT only removed two out of ten "substantially similar cases" is evidence that it engaged in forum shopping. (ECF No. 29 at 7). HSH further asserts that NDOT is only seeking ruling on HSH's federal causes of action so that the action will be remanded back to state court. (*Id.*) Even if true, it is unclear how such a plan would constitute forum shopping. Cases where courts have found instances of forum shopping involve facts much different than those presented here. *See, e.g., Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989) (following over three years of state court litigation, party filed suit in federal court because of adverse rulings in state court); *American Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1259 (9th Cir. 1988) (plaintiff abandoned state court case because it believed the Federal Rules of Evidence were more favorable to it than the state rules of evidence). Here, HSH's complaints were filed on the same day in both Clark County and Washoe County, and only the Washoe County action was removed to federal court. There is insufficient evidence of gamesmanship here in NDOT's decision to remove this case, but not the Clark County case, to federal court. This factor weighs against a stay.

In balance, the Court finds that a stay is appropriate in this case. Of particular note is the complexity of HSH's state law claims, the parallelism between its federal complaint and Clark County complaint, and the progress the state court case has made in comparison with this case. Litigation over whether NEV. REV. STAT. 453D.200(6) is unconstitutional under the Nevada constitution is better suited for Nevada state courts than federal court. As HSH asserts, given that the consolidated state case is ready to proceed to trial as of the entry of this order and that discovery has not yet begun in the federal case, it is likely that the state case will see a final disposition long before the resolution of the federal case. A stay will effectuate the conservation of judicial resources, which is one of the purposes of the *Colorado River* doctrine. *R.R. Street & Co. Inc.*, 656 F.3d at 978.

### IV. Conclusion

IT IS THEREFORE ORDERED that HSH's motion for a stay (ECF No. 29) is **GRANTED**.

IT IS FURTHER ORDERED that the parties are instructed to file a joint status report within thirty days of a final disposition of the consolidated case in Clark County.

IT IS SO ORDERED.

DATED this 30th day of June 2020.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE